___FILED ___ENTERED
___LODGED ___RECEIVED

MAR 18 2019  ST

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONTE McCLELLON, an individual

Plaintiff,

v.

BANK OF AMERICA N.A., a corporation

Defendant.

NO. 19-CV-394 RSL

PLAINTIFF'S COMPLAINT

JURY TRIAL DEMANDED

Pro Se Plaintiff Donte McClellon, hereby submits this complaint for the causes of action against the Defendant and law supporting Defendant Bank's liability for Plaintiff's damages, and states as follows:

INCLUDES REGULATION J SUBPART B AND ARTICLE 4-A OF UNIFORM COMMERCIAL CODE

I.     PRELIMINARY STATEMENT

1.1     This is an action under the Uniform Commercial Code (4.22.005 to 925; § 4A-202; § 4A-201; and § 4A-204) and Washington Consumer Protection Act, RCW 19.86.020, based upon Defendant's blatant self-dealing and other intentional negligent misconduct in conversion, freezing, pooling, otherwise manipulating Plaintiff's funds without Plaintiff's authorization.

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

1.2 Defendant was negligent in complying with ERROR RESOLUTION PROCEDURES: 12 C.F.R. §1005.11 and CONSUMER LIABILITY FOR UNAUTHORIZED EFTs: 12 C.F.R. §1005.6.

1.3 Defendant was negligent and is liable for the harm to Plaintiff because they executed these two fraudulent wire transfers by simply comparing signatures as their investigation finding letter stated which does not comply with RCW 62A.4A-201 and RCW 62A.4A-202 as a security procedure. According to Defendant's investigation finding letter, that is required under Regulation E, their only finding was that the signatures matched. Which of course, Plaintiff contest.

1.4 But for the actions of the Defendant's actions in transmitting these two fraudulent wire transfers by not following security procedure according to Defendant's investigation finding letter, Plaintiff would've had his funds to procure 100 Bitcoins at Coinbase.

1.5 Defendant failed to detect fraud and accepted unauthorized funds transfers.

1.6 Plaintiff further allege that the Defendant breached the contract, failed to comply with Electronic Fund Transfer Act implemented by Regulation E and committed the tort of negligence in the handling of Plaintiff's funds. The Plaintiff seeks compensatory damages and all other damages (i.e., direct and consequential damages) allowed by law, and payment of costs and attorneys' fees.

1.7 Plaintiff opened an checking account with Defendant.

1.8 Plaintiff timely filed his good faith Regulation E claims with Defendant on **May 19 2017** but the Defendant failed to protect the checking account in subject, provisional credit the Plaintiff and have those funds be accessible to him.

DONTE McCLELLON<br>
Pro Se Plaintiff<br>
7909 37th Ave S.<br>
Seattle, WA 98118

1.9   Timely filed because Electronic Funds Transfer act implemented by Regulation E states a claim must be filled **within 60 days**. The days between April 3rd 2017 and May 19th 2017 is **46 calendar days**. And the days between April 18th 2017 to May 19th 2017 is **31 calendar days**. So Plaintiff was in compliance with RCW 62A.4A-204 also.

1.10   The claim number is 19MAY2017-802794

1.11   The fraudulent transactions at issue that took place in the checking account in subject are $123,553.15 on April 3rd, 2017 and $54,000.00 on April 18th, 2017

1.12   As the depositor, the Plaintiff is entitled to protections under Regulation E: Electronic Fund Transfers 12 CFR 205. Regulation E provides a basic framework that establishes the rights, liabilities, and responsibilities of participants in electronic fund transfer systems such as automated teller machine transfers, telephone bill-payment services, point-of-sale (POS) terminal transfers in stores, and preauthorized transfers from or to a consumer's account (such as direct deposit and social security payments). The term "electronic fund transfer" (EFT) generally refers to a transaction initiated through an electronic terminal, telephone, computer, or magnetic tape that instructs a financial institution either to credit or to debit a consumer's asset account.

1.13   "The Electronic Fund Transfer Act (EFTA), as implemented by Regulation E, provides basic protections for consumers with electronic direct deposits or who use debit cards to access their deposit account held directly or indirectly at a bank. These protections include timeframes by which a bank must investigate and determine whether an error occurred when you notify your bank of an error and, in some cases, requirements to provide provisional credit while the investigation is performed. For

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

example, if you notify your bank of a potential account error, Regulation E requires a bank to investigate and determine whether an error occurred within 10 business days of receiving your notice (or 20 business days for new accounts). If a bank is unable to complete its investigation within the appropriate timeframe, it may take up to 45 days to determine whether an error occurred. But in these cases, banks must generally provide consumers with a provisional credit to their account within 10 days of the bank receiving the error notice. Also, banks must notify consumers about the provisional credit within two days of providing the credit. " (Taken verbatim from FDIC @ https://www.fdic.gov/consumers/assistance/protection/errorresolution.html)

1.14 Section 205.11 Procedures for resolving errors, states that if a consumer notifies an institution that an error involving an EFT has occurred, the institution must investigate and resolve the claim within specified deadlines. Errors covered by this requirement include unauthorized EFTs, incorrect EFTs, and the omission from an account statement of an EFT that should have been included.

1.15 Section 205.6 Liability of consumer for unauthorized transfers, limits a consumer's liability for unauthorized electronic fund transfers, such as those arising from loss or theft of an access device, to $50; if the consumer fails to notify the depository institution in a timely fashion, the amount may be $500 or unlimited.

1.16 TAKEN VERBATIM: *"§ 205.6 Liability of consumer for unauthorized transfers.*

*(a)Conditions for liability. A consumer may be held liable, within the limitations described in paragraph (b) of this section, for an unauthorized electronic fund transfer involving the consumer's account only if the financial institution has provided the disclosures required by § 205.7(b)(1), (2), and (3). If the unauthorized transfer*

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

*involved an access device, it must be an accepted access device and the financial institution must have provided a means to identify the consumer to whom it was issued.*

*(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:*

*(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.*

*(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:*

*(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and*

*(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.*

*(3) Periodic statement; timely notice not given. A consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60 days of the financial institution's transmittal of the statement to avoid liability for*

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

subsequent transfers. If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period. When an access device is involved in the unauthorized transfer, the consumer may be liable for other amounts set forth in paragraphs (b)(1) or (b)(2) of this section, as applicable.

(4) Extension of time limits. If the consumer's delay in notifying the financial institution was due to extenuating circumstances, the institution shall extend the times specified above to a reasonable period.

(5) Notice to financial institution.

(i) Notice to a financial institution is given when a consumer takes steps reasonably necessary to provide the institution with the pertinent information, whether or not a particular employee or agent of the institution actually receives the information.

(ii) The consumer may notify the institution in person, by telephone, or in writing.

(iii) Written notice is considered given at the time the consumer mails the notice or delivers it for transmission to the institution by any other usual means. Notice may be considered constructively given when the institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or may be made.

(6) Liability under state law or agreement. If state law or an agreement between the consumer and the financial institution imposes less liability than is provided by this

DONTE McCLELLON  
Pro Se Plaintiff  
7909 37th Ave S.  
Seattle, WA 98118

*section, the consumer's liability shall not exceed the amount imposed under the state law or agreement."*

1.17   Here, Plaintiff notified the Defendant within the 60 day time frame of these transactions pursuant to Regulation E.

1.18   Defendant has already honored and paid prior fraud claims as well as identified errors in the checking account in subject, however Defendant whatever reason is now backpedaling and refusing to honor similar fraud claims identified in this suit.

1.19   By honoring and paying other fraud claims that are within the same time period (i.e., 2 months) as the fraud claims identified in this suit, Defendant was aware of the fraudulent transactions occurring in the checking account in subject here.

1.20   Regulation E states that a provisional credit must be provided within 10 business days

1.21   Plaintiff deposited the funds relevant to this matter into Bank of America. Bank of America failed to protect the funds because they did not properly verify whether the person doing wire transfers out of the account actually was the same person who deposited the funds.

1.22   Defendant engaged in blatant self-dealing because they earned a $30 fee on each wire transfer they initiated which highlights their involvement in the fraudulent transactions in subject here.

1.23   Defendant also engaged in blatant self-dealing because Plaintiff is the depositor and Defendant makes money through its loans program off of Plaintiff's deposits. And in

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

exchange Defendant is supposed to provide interest which Plaintiff did has not receive and/or has no access to receive them even after a written and oral demand by Plaintiff.

1.24   Plaintiff made mention of Regulation E because Plaintiff made a timely claim under this Regulation E with Bank of America. Bank of America did not do a thorough investigation nor followed the 10 business day rule outlined in Regulation E. They never provisionally credited the Plaintiff for the amount of the fraudulent wires nor made any funds available to Plaintiff to actually withdraw as the depositor. In addition to that, Plaintiff also timely informed Bank of America that his identity had been stolen prior to these wires taking place. Furthermore, after doing some digging, theses wires took place in a Bank of America branch in Seattle, Washington. Plaintiff was not in the Seattle area on April 3rd 2017 nor April 18th 2017. Plaintiff has an alibi to that effect.

1.25   Plaintiff never gave any Bank of America employee any specific instruction or any instruction for that matter to wire transfer funds out of the checking account in subject in regards to these two transactions on April 3rd 2017 and April 18th 2017. But for the actions of the Defendant such as failure to comply with Uniform Commercial Code § 4A-201 and § 4A-202, Plaintiff was harmed and suffered actual damages. In addition to that, Plaintiff suffered lost opportunity damages due to Bank of America's failure to return the funds of $177,553.15 to Plaintiff even after written and oral demand and filing of a timely claim.

1.26   This case is primarily a breach of agency case with the basis being unauthorized activity and fraud. According to the Restatement, Third, of Agency, Section 8.08: "Subject to any agreement with the principal, an agent has a duty to the principal to

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

act with the care, competence and diligence normally exercise by agents in similar circumstances. Special skills or knowledge possessed by an agent are circumstances to be taken into account in determining whether the agent acted with due care and diligence..." A representative's duty of care is governed by common law agency principles as set forth above; the duty of care is also determined by securities industry standards and duties arising from securities industry affiliation. The duties state in Section 8.08 are tort law duties because they "denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so, he becomes subject to liability to another to whom the duty is owed for any injuries sustained by such other, of which that actor's conduct is legal cause." Restatement (Second) Torts, Section 4. Tort law imposes duties of care on an agent because the agent undertakes to act on behalf of the principal, because the principal's reliance on that undertaking is foreseeable by the agent, and because it is often socially useful that an agent fulfill the agent's undertaking to the principal. See, Reinstatement (Second) Torts, Section 323. That overlap between tort and contractual duties will often provide the principal with alternative remedies when a breach of duty subjects the agent to liability. Restatement (Third) of Agency, Section 8.08 comment b.

1.27   Washington law follows the restatement. Agents have a duty to exercise care in dealing with their principals and are liable for any damage caused by a breach of that duty. Monty v. Peterson, 85 Wn.2d 956, 540 P.2d 1377 (1975). The fiduciary obligation of the agent to its principal may be a breached although no corruption, dishonesty or bad faith is involved. Williams v. Queen Fisheries, Inc., 2 Wash. App 691, 469 P.2d 583 (1970). An agent exceeding, violating or neglecting instructions is responsible to principal for all losses naturally resulting. Nelson v. Smith, 140 Wash.

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

293, 248 P. 798 (1926), and where an agent's breach of duty is clear, the principal will be presumed to have sustained some damage but to recover more, there must be proof of real loss or actual damage. Miller v. Staples & Son Fruit Company Inc., 26 Wash. App. 166, 611 P.2d 801 (1980). An agent's negligence renders him or her liable for actual damages caused to the principal. Monty v. Peterson, 85 Wn.2d 956, 540 P.2d 1377 (Wash. 1975).

1.28   The actual damages are ordinarily calculated based on protection of the disappointed promises' expectation interest and are designed to secure for that party the benefit of the bargain that he or she made by awarding the sum of money that will place the promise in as good a position as he or she would have occupied had the contract been performed. (See, Reinstatement Second of Contracts, Section 344 and cases cited thereunder.) The party's expectation interest is measured by his anticipated receipts plus losses caused by the breach, less any cost or other loss he has avoided by not having to perform. LeFarge Corp. V. Wolf, 977 S.W.2d 181 (Tex. App. Austin 1998). In Plaintiff's case, there can be no question that there was an agency relationship requiring Defendant's faithful performance of its obligations to Plaintiff, as required under the common law and in compliance with Uniform Commercial Code.

1.29   On March 31st 2017, Plaintiff informed a Bank of America representative of Plaintiff's plan to buy 100 bitcoins with $150,000 on April 27th 2017 and wire transfer the funds from checking account in subject to Coinbase.

1.30   Price of Bitcoin was $1,332.91 on April 27th 2017

1.31   Price of Bitcoin was $13,444.88 on January 1st 2018

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

1.32 The significant measure of damages is the value of the lost opportunity to purchase Bitcoin. This is essentially a lost profits analysis where a Plaintiff's damages are measured by what was not earned due to the defendant's wrongful conduct.

1.33 Actual damages include "damages for injury in fact, as distinguished from exemplary, nominal or punitive damages." Ellingson v. Spokane Mortgage Co., 19 Wash.App. 48, 58, 573 P.2d 389 (1978). Lost profits are a recoverable element of damages. Lundgren v. Whitney's, Inc., 94 Wn.2d 91, 98, 614 P.2d 1272, 1276 (1980). In order to recover, the Plaintiff must show that the lost profits were contemplated by the parties, are the proximate result of defendant's breach, and they must be proven with reasonable certainty. Larsen v. Walton Plywood Co., 65 Wn.2d 1, 15-16, 390 P.2d 677 (1964). The proximate cause aspect of lost opportunity damages requires certainty as to the fact that damage resulted from defendant's breach. Tiegs v. Watts, 135 Wn.2d 1, 17-18, 954 P.2d 877, 886 (1998).

1.34 Plaintiff will prove Respondent's negligence by a preponderance of the evidence and resulting damages with reasonable certainty. Declaration will establish Defendant's failure to fulfill its duty of care in handing Plaintiff's funds. The only real question here is ascertaining damages. Damages which are remote and speculative cannot be recovered. Larsen v. Walton Plywood Co., 65 Wn.2d 1, 16, 390 P.2d 677, 686 (1964) citing Bromley v. Heffernan Engine Works, 108 Wash. 31, 182 Pac. 929; National School Studios v. Superior School Photo Ser., 40 Wn. 2d 263, 242 P.2d 756. However, if a Plaintiff has produced the best evidence available, and if the evidence affords a reasonable basis for estimating the loss, courts will not permit a wrongdoer to benefit from the difficulty of determining the dollar amount of loss. Lundgren v. Whitney's, Inc., 94 Wn.2d 91, 98, 614 P.2d 1272, 1276 (1980),

citing Reefer Queen Co. v. Marine Constr. & Design Co., 73 Wn.2d 774, 781, 440 P.2d 448 (1968). The Plaintiff need not prove the exact amount of lost profits if the evidence is sufficient to establish a reasonable basis for estimating the plaintiff's lost profits. Larsen, 65 Wn.2d at 18. Although damages which are remote and speculative cannot be recovered, lost profits will not be denied where factual data is presented as a basis for computing probable losses. Tiegs, 135 Wn.2d at 17-18. Finally, that Defendant did not earn a commission will not preclude Plaintiff's recovery, because he may recover damages based on the harm caused by Defendant's breach of duty even when it did not profit by the breach. Restatement 3d of Agency, §8.01.

1.35   Once the Court concludes that Defendant negligently handled Plaintiff's funds as well as the investigation finding, the next analysis is the damages suffered. Here, all parties knew of Plaintiff's intent to purchase 100 Bitcoin.

1.36   The effect of that failure was the Plaintiff was unable to fully purchase Bitcoin through Coinbase as planned. Had Defendant returned Plaintiff's funds, Plaintiff would have successfully wire transferred the funds to Coinbase on April 26th, 2017 and purchase 100 Bitcoin on April 27th, 2017. The evidence will include a Declaration on moment by moment Bitcoin values, and Bitcoin pricing at relevant times, in order to show the significant appreciation, which of course yielded the opportunity that Defendant squandered.

II.   ADDITIONAL INDISPUTABLE FACTS AND ARGUMENT; DEFENDANT BANK'S FAILURE TO COMPLY WITH UNIFORM COMMERCIAL CODE WITH THEIR ALLEGED INVESTIGATION FINDING

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

2.1  After the Defendant Bank's investigations, the only reason that Defendant Bank gave to Plaintiff for **twice** denying his timely-made Regulation E claim for those fraudulent wire transfers was that the **signatures matched [sic]**. When they say that signatures matched, they refer to the signature card for the account in subject was compared to the signature on the wire transfers. That was the **only alleged finding** that they supplied to Plaintiff even after numerous calls and demands in writing for any additional findings.

2.2  Taken verbatim from Uniform Commercial Code: "§ 4A-202. AUTHORIZED AND VERIFIED PAYMENT ORDERS. (b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the **security procedure [sic]** is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted." Also restated in RCW 62A.4A-202.

2.3  Again taken verbatim from Uniform Commercial Code: "§ 4A-202. AUTHORIZED AND VERIFIED PAYMENT ORDERS. "(c) Commercial reasonableness of a **security procedure [sic]** is a question of law to be determined by considering the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type, and frequency of payment orders

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

normally issued by the customer to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving banks similarly situated. A security procedure is deemed to be commercially reasonable if (i) the security procedure was chosen by the customer after the bank offered, and the customer refused, a security procedure that was commercially reasonable for that customer, and (ii) the customer expressly agreed in writing to be bound by any payment order, whether or not authorized, issued in its name and accepted by the bank in compliance with the security procedure chosen by the customer." Also restated in RCW 62A.4A-202.

2.4  Lastly taken verbatim from Uniform Commercial Code: "§ 4A-201. SECURITY PROCEDURE. "Security procedure" means a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. **Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure [sic].**" Also restated in RCW 62A.4A-201.

2.5  It is clear from Uniform Commercial Code that what Defendant actually should've wrote and told Plaintiff after the conclusion of the investigation was that Defendant Bank had no valid findings to twice deny Plaintiff's Regulation E claim and there was indeed an error. And Defendant will return Plaintiff's funds of $177,553.15.

2.6  FURTHERMORE taken verbatim from (https://www.fdic.gov/consumers/assistance/protection/errorresolution.html), "The

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

Electronic Fund Transfer Act (EFTA), as implemented by Regulation E, provides basic protections for consumers with electronic direct deposits or who use debit cards to access their deposit account held directly or indirectly at a bank. These protections include timeframes by which a bank must investigate and determine whether an error occurred when you notify your bank of an error and, in some cases, requirements to provide provisional credit while the investigation is performed. For example, if you notify your bank of a potential account error, Regulation E requires a bank to investigate and determine whether an error occurred within 10 business days of receiving your notice (or 20 business days for new accounts). If a bank is unable to complete its investigation within the appropriate timeframe, it may take up to 45 days to determine **whether an error occurred [sic]**. But in these cases, banks must generally provide consumers with a provisional credit to their account within 10 days of the bank receiving the error notice. Also, banks must notify consumers about the provisional credit within two days of providing the credit… If the bank determines there is an error on your account, it must correct the error within one business day after confirming it and report the results to you within three business days after completing its investigation (including, if applicable, notice that a provisional credit has been made final). If a bank determines that no error occurred or that an error occurred in a manner or amount different from that described in your notice, the bank **must send a written explanation of its findings [sic]** and note your right to request the documents the bank relied on for its investigation. When the bank debits the funds provisionally credited to your account during the investigation, it must provide you with the date and amount debited. In addition, the bank must inform you that it will honor checks, drafts, or similar instruments payable to third parties and preauthorized

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA  98118

transfers from your account (without charge as a result of an overdraft) for five business days after the notification."

2.7  Second-Tier Liability ($500 Maximum): §1005.6(b)(2). If a consumer fails to notify the financial institution within two business days after learning that the access device was lost or stolen but notifies the institution of the loss or theft within **60 days** of the financial institution's transmittal of the statement containing the error, the institution may hold the consumer liable for the lesser of (a) $500 or (b) the sum of: (i) the consumer's first-tier liability, i.e., the lesser of $50 or the amount of unauthorized EFTs that occur before the end of the second business day after the consumer learns of the loss or theft; and (ii) the amount of unauthorized EFTs that occur after the end of the second business day after the consumer learns of the loss or theft and before notice to the institution, provided the institution establishes that the unauthorized EFTs would not have occurred had the consumer provided notice within two business days after learning of the loss or theft.22"

2.8  Duty - The defendant owed a legal duty to the plaintiff under the circumstances;

2.9  Breach - The defendant breached that legal duty by acting or failing to act in a certain way;

2.10  Causation - It was the defendant's actions (or inaction) that actually caused the plaintiff's injury; and

2.11  Damages - The plaintiff was harmed or injured as a result of the defendant's actions.

### III.   PARTIES

3.1  Plaintiff Donte McClellon is an individual residing in King County, Washington.

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118

3.2     Corporate Defendant Bank of America, N.A. regularly conducts business in King County, Washington.

## IV.     EXERCISING OF RIGHTS

4.1     Plaintiff is exercising his rights to demand a jury trial.

## V.     PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully request that this Court:

1. Order Defendant to pay treble damages pursuant to Washington Consumer Protection Act RCW 19.86.090, in amounts to be determined at trial

2. Order Defendant to pay punitive damages, compensatory damages, direct damages, actual damages, and consequential damages

3. Order Defendant to pay lost of Opportunity Damages

4. Order Defendant to make Plaintiff whole by returning Plaintiff's funds with prejudgment interest, in amounts to be determined at trial

5. Award Plaintiff all of the recoverable costs of this action, attorneys' fees, cost, prejudgment interest, in amounts to be determined at trial; and

6. Grant any additional or further relief as provided by law which this Court finds appropriate, equitable, or just.

DATED this 18th day of March, 2019

DONTE McCLELLON  
Pro Se Plaintiff  
7909 37th Ave S.  
Seattle, WA  98118

By _Donte McClellon_
Donte McClellon,
Pro Se Plaintiff
7909 37th Ave S.
Seattle, Washington 98118

DONTE McCLELLON
Pro Se Plaintiff
7909 37th Ave S.
Seattle, WA 98118